# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONCESIONARIA VUELA COMPAÑÍA DE AVIACIÓN S.A.P.I DE C.V., a Mexican stock corporation, and CONTROLADORA VUELA COMPAÑÍA DE AVIACIÓN, S.A.B. DE C.V., a Mexican stock corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ELAINE BROWN SELAN and CONCESIONARIA VUELA COMPAA DE AVIACIN, S.A.P.I. DE C.V., a California nonprofit corporation, and CONTROLADORA VUELA COMPANIA DE AVIACION, S.A.B. DE C.V., a California nonprofit corporation,<br><br>Defendants. | Case No.:  3:25-cv-2284-GPC-SBC<br><br>**ORDER RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**<br><br>**[ECF No. 19]** |

On November 26, 2025, Plaintiffs Concesionaria Vuela Compañía de Aviación S.A.P.I de C.V. and Controladora Vuela Compañía de Aviación, S.A.B. de C.V.

1

(collectively, "Plaintiffs") filed a Complaint alleging federal and California trademark and trade name infringement. ECF No. 1 ("Compl."). Plaintiffs filed a motion for default judgment on February 23, 2026. ECF No. 19. No opposition has been filed. ECF No. 21. Based on the reasoning below, the Court will give Plaintiffs an opportunity to withdraw the motion and amend the complaint within 21 days of the filing of this order. Otherwise, the Court will GRANT in part Plaintiff's motion for default judgment.

## I.    BACKGROUND

Plaintiffs operate a commercial airline, offering flights within North America and to Central and South America. Compl. ¶ 12. In 2009, Plaintiffs entered the US commercial flight market under Plaintiff Concesionaria's corporate and trade name "Concesionaria Vuela Compania de Aviacion SAPI de CV" ("U.S. Trade Name") and collective global trade name "Volaris" ("Global Trade Name"). *Id*. ¶ 13. Since entering the market, Plaintiffs have "consistently used and registered to conduct business, through [P]laintiff Concesionaria, under the U.S. Trade Name in various jurisdictions throughout the United States." *Id*. On April 18, 2011, Plaintiff Concesionaria filed and obtained a certificate of qualification to conduct business as an out-of-state stock corporation in the State of California under the U.S. Trade Name. *Id*.

Plaintiffs have used the VOLARIS Mark in commerce throughout the United States since August 26, 2009. *Id*. ¶ 19. Specifically, "Plaintiff advertises and promotes their air transportation services under the VOLARIS Mark through their website and social media throughout the United States." *Id*. ¶ 23.

On November 17, 2009, Plaintiff Concesionaria was granted U.S. Registration No. 3712524. *Id*. ¶ 17. That registration is for the mark VOLARIS in standard characters (the "VOLARIS Mark") in connection with "[a]ir transportation services for the carriage of passengers, mail, freight and cargo; packaging articles for transportation; storage of cargo and general merchandise goods; coordinating travel arrangement for individuals and for

3:25-cv-2284-GPC-SBC

groups." *Id*. ¶ 16, Ex. 2. On August 8, 2019, the registration was assigned to Plaintiff Controladora. *Id*. ¶ 17.

On March 2, 2021, U.S. Registration No. 6283810 was granted to Plaintiff Controladora. *Id*. ¶ 18. That registration is for the VOLARIS Mark in connection with "[a]ir transportation services; aeronautical transportation services; information regarding transportation; transportation of passengers; piloting services; aircraft rental; transportation services, namely, airline transportation services, transportation reservation services, and transportation consulting services." *Id*. ¶ 16, Ex. 3.

Defendant Concesionaria was formed on February 15, 2023. *Id*. ¶ 31. Upon Plaintiffs' information and belief, Defendant Selan electronically executed and filed the Articles of Incorporation with the California Office of the Secretary of State. *Id*. This formed a nonprofit mutual benefit corporation under the laws of the State of California, using "Concesionaria Vuela Compaa de Aviacin, S.A.P.I. de C.V." ("Concesionaria Infringing Name") as the corporation name. *Id*. Defendant Selan is listed as the registered agent for service of process in the Articles of Incorporation. *Id*.

Defendant Controladora was also formed on February 15, 2023. *Id*. ¶ 32. Upon Plaintiffs' information and belief, Defendant Selan electronically executed and filed the Articles of Incorporation with the California Office of the Secretary of State. *Id*. This formed a nonprofit mutual benefit corporation under the laws of the State of California using "Controladora Vuela Compania de Aviacion, S.A.B. de C.V." (the "Controladora Infringing Name", and together with the Concesionaria Infringing Name, the "Infringing Names") as the corporation name. *Id*. Like Defendant Concesionaria CA, Defendant Selan is also listed as the registered agent for service of process in the Articles of Incorporation. *Id*.

The Articles of Incorporation for both Defendant Concesionaria and Defendant Controladora (together, "Entity Defendants") provide that the mailing address of the

entities and their registered agent, Defendant Selan, is 416 W San Ysidro Blvd, L-1958, San Ysidro, CA 92173, and that the principal office address is 30 N Gould, Suite R, Sheridan, WY, 82801. *Id*. ¶ 34.

Defendants Selan, Concesionaria, and Controladora (collectively, "Defendants") also began using a mark (the "Infringing Mark") similar to Plaintiff's VOLARIS Mark in U.S. commerce. *Id*. ¶ 30.

On May 9, 2024, Plaintiffs' counsel sent a letter to the Office of the California Secretary of State, informing the Office of Defendant Selan's actions. *Id*. ¶ 36. On June 21, 2024, the Legal Affairs Unit of the California Secretary of State Business Programs Division responded that the Entity Defendants were both in good standing, that Plaintiff's U.S. Trade Name was distinguishable from Defendant Concesionaria's corporate name, and that the matter could only be resolved through a private civil lawsuit or by another state or local agency. *Id*.

On June 12, 2024, while awaiting a response from the California Secretary of State, Plaintiffs sent a cease-and-desist letter to Defendant Selan at the registered agent address, "demanding she cease her unauthorized uses of Plaintiff's U.S. Trade Name and the trade name of [P]laintiff Controladora and file appropriate documents to dissolve" the Entity Defendants. *Id*. ¶ 37. Plaintiffs have received no response. *Id*. ¶ 38.

Plaintiffs allege that Defendants' infringing acts have resulted in confusion. In at least one instance, a party wishing to serve Plaintiff Concesionaria with a complaint served the complaint on Defendant Selan via mail. *Id*. ¶ 39. Plaintiff Concesionaria never received a copy of the complaint and had no notice of the matter until a hearing date was already set. *Id*.

On November 26, 2025, Plaintiffs filed a complaint alleging (1) federal trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), (2) federal trade name infringement, unfair competition, false representation, and false designation

3:25-cv-2284-GPC-SBC

of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (3) California trademark infringement, Cal. Bus. & Prof. Code § 14200 *et seq.*, (4) California trade name infringement, Cal. Bus. & Prof. Code § 14400 *et seq.*, (5) California unfair competition, Cal. Bus. & Prof. Code § 17200 *et seq.*, and (6) California false advertising, Cal. Bus. & Prof. Code § 17500 *et seq. Id.* ¶¶ 43, 58, 63, 73, 81, 84.

On December 17, 2025, the Court granted Plaintiffs' motion authorizing service of summons through alternative means. ECF No. 10. As to Defendant Concesionaria and Defendant Controladora, the Court authorized service upon the California Secretary of State in accordance with Section 1702 of the California Corporations Code. *Id.* As to Defendant Selan, the Court approved service by publication in the *San Diego Union-Tribune* in accordance with Cal. Gov't Code § 6064.

On January 23, 2026, Plaintiffs sought entry of default against the Entity Defendants. ECF Nos. 13, 14. On January 26, 2026, Plaintiffs obtained a clerk's entry of default against Defendants. ECF No. 15. On February 19, 2026, Plaintiffs sought entry of default against Defendant Selan. ECF No. 17. On February 20, 2026, Plaintiffs obtained a clerk's entry of default against Defendants. ECF No. 18. On February 23, 2026, Plaintiffs filed a motion for default judgment against Defendants. ECF No. 19. No opposition has been filed. ECF No. 21.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs default judgment, a process which requires two steps. *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) (noting the two-step process required by Rule 55); *see also Symantec Corp. v Global Impact*, 559 F.3d 922, 923 (9th Cir. 2009) (same). First, under Rule 55(a) "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R.

3:25-cv-2284-GPC-SBC

Civ. P. 55(a). Second, the Plaintiff may seek a default judgment under Rule 55(b). Fed. R. Civ. P. 55(b).

At the default judgment stage, the factual allegations of the complaint—excluding damages—are deemed admitted by the non-responding parties. *Amazon Content Servs. LLC v. DeBarr*, 793 F. Supp. 3d 1242, 1250 (C.D. Cal. 2025); *see also Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."). "However, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (citation and quotation omitted)). "[I]t follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

The decision to grant or deny default judgment is within the discretion of the district court. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1090, 1092-92 (9th Cir. 1980). The Ninth Circuit has enumerated seven factors for courts to consider "in exercising discretion as to the entry of default judgment:"

(1) the possibility of prejudice to the plaintiff,

(2) the merits of the plaintiff's substantive claim,

(3) the sufficiency of the complaint,

(4) the sum of money at stake in the action,

(5) the possibility of a dispute concerning material facts,

(6) whether the default was due to excusable neglect, and

(7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

6

"If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the amount and character of the relief that should be awarded." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (quotations omitted). However, the scope of relief is limited; a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 55(a). "In determining damages, a court can rely on the declarations submitted by the plaintiff or order a full evidentiary hearing." *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). "[A] default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

## III.   DISCUSSION

### a.   Jurisdiction and Service

As a threshold matter, the Court is obligated to review the question of jurisdiction sua sponte. *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1135 (9th Cir. 1997) (en banc); *see also Gupta v. Thai Airwys Intern., Ltd.*, 487 F.3d 759, 764 (9th Cir. 2007).

**Subject Matter Jurisdiction.** There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331 and (2) diversity jurisdiction under 28 U.S.C. § 1332. As relevant here, federal question jurisdiction is established if "federal law creates the cause of action." *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 690 (2006); *Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1130 (9th Cir. 2012). Where a state law claim does not fall under federal question or diversity jurisdiction, Section 1367(a) grants supplemental jurisdiction over claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

3:25-cv-2284-GPC-SBC

The allegations in the complaint are sufficient to establish subject matter jurisdiction because there is federal question jurisdiction over the first two claims and supplemental jurisdiction over the remaining claims. Plaintiffs' first two causes of action arise under the Lanham Act, a federal law; thus, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over those claims. The remaining claims arise under state law, in particular the California Business and Professions Code, which do not provide for federal question jurisdiction. However, those claims stem from the same case or controversy as the Lanham Act claims. Thus, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). *See Lewis v. Heritage Auctions*, Case No. 2:25-cv-00748-AH-(PDx), 2025 WL 2376708 (C.D. Cal. Jul. 8, 2025) (holding that because the plaintiff's state law claims are "factually related and part of the same case or controversy" as the Lanham Act claims, the district court has supplemental jurisdiction over all of plaintiff's state law claims).

**Personal Jurisdiction.** "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For a corporation, the place of incorporation and the principal place of business establish general personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Here, Entity Defendants' place of incorporation is California. ECF No. 19-1 ("Mot.") at 10.[1] Defendant Selan listed an address located in this district, and Plaintiffs' efforts did not reveal any alternative addresses. *Id*. Thus, the Court can exercise general personal jurisdiction over the defendants.

**Personal Service.** A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4. *Direct Mail*

---

[1] Page numbers are based on the CM/ECF pagination.

3:25-cv-2284-GPC-SBC

*Specialist, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir.1984).

Here, the Entity Defendants were properly served by alternative means pursuant to Federal Rule of Civil Procedure 4(h)(1)(A), which allows for service on a corporation by following Rule 4(e)(1).[2] *See* ECF No. 16; Fed. R. Civ. P. 4(h)(1)(A).  Further, Defendant Selan was properly served pursuant to Rule 4(e)(1). *Id.*

### b. The *Eitel* Factors

Applying the seven *Eitel* factors, the Court finds default judgment is warranted in favor of Plaintiffs.

### i. Prejudice to the Plaintiff

Under the first factor, the Court must examine whether Plaintiff will be prejudiced if the Court denies default judgment.  *See Eitel*, 782 F.2d at 1471.  This factor weighs in favor of default judgment "when a defendant has failed to appear or defend against a suit, and the plaintiffs could not otherwise seek relief." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citations omitted); *see Amazon Content Servs. LLC v. DeBarr*, 793 F. Supp. 3d 1242, 1251 (C.D. Cal. 2025) ("Prejudice can be shown if denying default judgment would leave a plaintiff without a remedy.")  Here, Defendants have made no appearance. Thus, Plaintiff would be

---

[2] Federal Rule of Civil Procedure 4(e)(1) allows service pursuant to "state law of serving a summons in an action brought in courts of general jurisdiction in the state where the district is located."  Fed. R. Civ. P. 4(e)(1). The December 17, 2025 Court order authorizing alternative service relied on Section 1702 of the California Corporations Code for service on the Defendant corporations through the Secretary of State and Cal. Gov't Code § 6064 for service by publication on Defendant Selan. ECF No. 10.

3:25-cv-2284-GPC-SBC

prejudiced absent a default judgment as there would be no remedy. This factor weighs in favor of default.

### ii. Substantive Claims and Sufficiency of the Complaint

The second and third *Eitel* factors "require that Plaintiff's allegations state a claim upon which it may recover." *Adobe Systems Inc. v. Kern*, No. 09-CV-1076-CW(JL), 2009 WL 5218005, at *3 (N.D. Cal. Nov. 24, 2009); *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978) (stating that the issue is whether the allegations in the complaint state a claim upon which plaintiff can recover). "In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon default." *Bd. of Trs. of Sheet Metal Workers v. Moak,* No. 11-CV-4620-CW, 2012 WL 5379565, at *2 (N.D. Cal. Oct. 31, 2012).

Plaintiff alleges two violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and four violations of the California Business and Professions Code.

### 1. Claim 1: Federal Trademark Infringement

Plaintiffs' first claim against Defendants alleges federal trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1). To prevail on a claim of trademark infringement under this section, a plaintiff must demonstrate (1) that it "owns a valid mark, and thus a protectable interest" and (2) that the defendant's "use of the mark 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009) (quoting *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)).

Here, Plaintiffs have properly alleged it owns a valid mark. Specifically, Plaintiffs provided evidence that the "VOLARIS" mark is federally registered by the USPTO. Compl. ¶¶ 16-18, Exs. 2-3; *see also* 15 U.S.C. § 1115(a) (registration of a mark on the principal register is prima facie evidence of the validity, ownership, and exclusive right to use the registered mark).

3:25-cv-2284-GPC-SBC

As for the second prong, the Court must evaluate whether "the similarity of the marks is likely to confuse customers about the source" of goods and services. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). To assess confusion, courts consider the *Sleekcraft* factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979).

"When the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected." *Id*. at 348. However, "[i]f the goods are totally unrelated, there can be no infringement because confusion is unlikely." *Id.*; *see also eAcceleration Corp. v. Trend Micro, Inc.*, 408 F. Supp. 2d 1110, 1117 (W.D. Wash. 2006) ("[E]ven where the marks are identical, 'there may be no consumer confusion— and thus no trademark infringement—if the alleged infringer is in a different geographic area or in a wholly different industry.'" (quoting *Brookfield*, 174 F.3d at 1054)).

Here, the court cannot adequately assess whether Defendants' use of the alleged infringing mark creates a likelihood of consumer confusion. Plaintiffs have made no attempt to identify the infringing mark or "establish the types of goods or services that [Defendants] actually sell[] or advertise[]." *Monster Energy Co. v. Pelmir Enter. Inc.*, No. 2:22-CV-00524-LK, 2023 WL 3075653, at *5 (W.D. Wash. Apr. 25, 2023*).* Instead, Plaintiff merely alleges that the Defendants "began using a mark (the 'Infringing Mark') confusingly similar to Plaintiffs' 'VOLARIS' Mark in U.S. commerce." Compl. ¶ 30. Without plausible allegations describing the "confusingly similar" mark or establishing the types of goods Defendants use the VOLARIS mark to sell, the Court cannot evaluate the *Sleekcraft* factor on the relatedness of the parties' goods or services. *See,*

11

3:25-cv-2284-GPC-SBC

*e.g., Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir. 2005) (in considering whether goods or services are related, the court must consider "whether customers are 'likely to associate' the two product lines" and "whether the buying public could reasonably conclude that the products came from the same source" (quoting *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998))). Similarly, without plausible allegations, the Court cannot adequately assess other *Sleekcraft* factors, such as the degree of care a consumer would use in purchasing the parties' products, the convergence of the parties' marketing channels, or the similarity of the parties' trademarks. *See Surfvivor Media*, 406 F.3d at 634 (noting that the degree of consumer care varies based on the type of good or service at issue); *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014) ("In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products."); *GoTo.com*, 202 F.3d at 1206.

Accordingly, the Court concludes that Plaintiffs have failed to adequately plead a claim for trademark infringement under 15 U.S.C. § 1114.

### 2. Claim 2: Federal Trade Name Infringement, Unfair Competition, False Representation, and False Designation of Origin

The claims of false designation of origin, unfair competition, trade name infringement, and trademark infringement are established with identical elements. *See New West Corp. v. NYM Co.*, 595 F.2d 1194, 1201 (9th Cir. 1979); *Fed'n of Telugu Associations of S. California v. Telugu Ass'n of S. California*, No. 14-CV-1278-RSW-LASX, 2016 WL 1588479, at *8 (C.D. Cal. Apr. 20, 2016) ("The elements to establish the claims of false designation of origin, unfair competition, and trademark infringement are 'identical.'"); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) ("The 'ultimate test' for unfair competition is exactly the same as for trademark infringement: 'whether the public is likely to be deceived or confused by the similarity of

3:25-cv-2284-GPC-SBC

the marks.'" (quoting *New W. Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1201 (9th Cir. 1979))); *Cloudclinic LLC v. TheraPetic Sols., Inc.*, No. 17-CV-1293-JLS (NLS), 2018 WL 9538569, at *7 (S.D. Cal. May 21, 2018).

Plaintiffs' second claim against Defendants alleges federal trade name infringement, unfair competition, false representation, and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a). "To prevail on its common law trade name infringement claim, Plaintiff show that (1) it has a valid, protectable trademark or trade name, and (2) Defendant[s'] use of the mark is likely to cause confusion." *Fed'n of Telugu Ass'ns of Southern Ca. v. Telugu Ass'n of Southern Ca.*, No. CV 14-1278 RSWL (Asx), 2016 WL 1588479, at *7 (C.D. Cal. Apr. 20, 2016) (citing *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007).

"[T]he first element . . . is comprised of two sub-parts: the mark's protectability and the plaintiff's ownership of the mark." *Id.* at *5. A mark's protectability depends on its distinctiveness within five categories: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014). Descriptive marks only become protectable if the mark acquires secondary meaning in the market by becoming distinctive as used in connection with the plaintiff's goods or services. *See id.*

In this case, Plaintiffs allege that their U.S. Trade Name Concesionaria Vuela Compania de Aviacion SAPI de CV is arbitrary or fanciful because U.S. consumers with less than a conversational level of fluency in Spanish will perceive the Trade Name as an arbitrary or fanciful phrase.[3] Compl. ¶ 14. Plaintiffs also allege the U.S. Trade Name has

---

[3] "Under the doctrine of foreign equivalents, foreign words from common languages are translated into English to determine genericness, descriptiveness, as well as similarity of connotation in order to ascertain confusing similarity with English word marks." *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369,

3:25-cv-2284-GPC-SBC

acquired distinctiveness through its "widespread, continuous, and exclusive uses" in commerce over time. *Id.* ¶ 15. Specifically, Plaintiffs have been using the U.S. Trade Name since 2009, have regularly conducted business under this trade name, and have filed documents to conduct business in the State of California under the U.S. Trade Name. *Id.* ¶ 13. Based on the factual allegations of ownership and use in commerce, Plaintiffs have sufficiently alleged common-law trademark rights in the U.S. Trade Name.

With respect to Plaintiff Controladora Vuela Compania De Avacion, S.A.B. DE C.V., Plaintiff alleges that it owns a majority of the issued and outstanding stock in Plaintiff Concesionaria and provides services in California though its subsidiary Concesionaria. *Id.* ¶8.  Plaintiff Controladora also "is the owner of two U.S. Trademark Registrations for the mark VOLARIS which marks it licenses to Plaintiff Concessionaria for exclusive use in the United States." *Id.* Both of the Plaintiffs share "Vuela Compania De Avacion" in their names. Given that the Court has already found that Concesionaria is sufficiently distinctive to garner trade name protection, the Court further holds that the shared trade name is similarly and sufficiently distinctive so as to attain secondary meaning for Plaintiff Controladora. Thus, both Plaintiffs have sufficiently alleged a violation of 15 U.S.C. § 1125(a).

As before, the second prong requires the Court to evaluate whether "the similarity of the marks is likely to confuse customers about the source" of goods and services. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). To assess

---

1377 (Fed. Cir. 2005) (citing *In re Sarkli, Ltd.*, 721 F.2d 353 (Fed. Cir. 1983)). "The doctrine should be applied only when it is likely that the ordinary American purchaser would stop and translate the word into its English equivalent." *Id.* (cleaned up). Plaintiffs' allegation, paired with the fact that "VOLARIS" is the mark used to identify Plaintiff's services to the public, prevents the Court from applying the doctrine of foreign equivalents. Compl. ¶ 20.

14

3:25-cv-2284-GPC-SBC

confusion, courts consider the *Sleekcraft* factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979). Application of the *Sleekcraft* factors when determining likelihood of confusion "is a fluid [test] and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005).

Here, the Court finds Plaintiffs have made a strong showing with respect to some of the *Sleekcraft* factors. As for the third factor, the corporate name of Defendant Concesionaria CA and Controladora CA are nearly identical to the Plaintiffs Trade Names. Standing alone, Plaintiffs' Trade Name, "Concesionaria Vuela Compania de Aviacion S.A.P.I. de C.V.," and Defendants' corporate name, "Concesionaria Vuela Compaa de Aviacin S.A.P.I. de C.V.," are visually and auditorily the same except the removal of three inconspicuous letters within two words of the U.S. Trade Name. *See Sleekcraft*, 599 F.2d at 351 (holding that "Sleekcraft" and Slickcraft" are similar in sight, sound, and meaning, thus the similarity of the marks factor cuts towards a finding of likelihood of confusion).  Further, Plaintiffs' Trade Name, "Controladora Vuela Compania de Aviacion S.A.B. de C.V.," and Defendants' corporate name, "Controladora Vuela Compania de Aviacion S.A.B. de C.V.," are exactly the same.

With respect to the fourth factor, Plaintiffs have alleged at least one instance of actual confusion resulting from similar marks. In particular, a party wishing to serve Plaintiff Concesionaria with a complaint instead served such complaint on Defendant Selan, despite not being a registered agent or affiliated with Plaintiffs. Compl. ¶ 39. As a result, Plaintiffs never received a copy of the complaint. *Id.*

3:25-cv-2284-GPC-SBC

In terms of the seventh factor, "[a]n inference of confusion [is] deemed appropriate where a mark is adopted with the intent to deceive the public." *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1059 (9th Cir. 1999) (citing *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992). Plaintiffs allege that Defendant Selan has filed articles of incorporation with the California Secretary of State for over 350 nonprofit mutual benefit corporations with the same agent, mailing address, principal office address, and purpose provided as the Entity Defendants. Compl. ¶ 35. The majority of these articles were filed between February 9, 2023, and February 16, 2023, and all the nonprofit mutual benefit corporations formed by Defendant Selan have a corporation name that is the trade name of a legitimate and existing for-profit business entity. *Id.* Thus, Plaintiffs allege that "Defendants' acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's U.S. Trade Name." *Id.* ¶ 40. Plaintiffs have sufficiently alleged facts showing Defendants knowingly adopted a mark similar to Plaintiffs' Trade Names.

Accordingly, this Court finds Plaintiffs have made a strong showing of a likelihood of confusion and, therefore, have sufficiently asserted a meritorious claim for federal trade name infringement under 15 U.S.C. § 1125(a).

### 3. California Trademark Infringement, Trade Name Infringement, Unfair Competition, and False Advertising

Plaintiffs' four remaining claims against Defendants alleges trademark infringement, trade name infringement, unfair competition and false advertising in violation of the California Business and Professions Code.

As to the first three California claims, the Ninth Circuit has "consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1180 n. 1 (9th

3:25-cv-2284-GPC-SBC

Cir.2013) (quoting *Cleary v. News Corp.,* 30 F.3d 1255, 1262–63 (9th Cir.1994)); *see also Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (finding that California state law trademark infringement claims are subject to the same test as federal claims under the Lanham Act). As this Court finds Plaintiffs sufficiently asserted a claim of trade name infringement, false designation of origin, and unfair competition claims under the Lanham Act, this Court similarly finds Plaintiffs have established its claims for trade name infringement and unfair competition under California Business and Professions Code § 17200. Likewise, as the Court finds that Plaintiffs failed to adequately plead federal trademark infringement, this Court similarly finds Plaintiffs have failed to establish its claim for California trademark infringement.

As to the fourth, false advertising claim, "Plaintiffs must prove that Defendant[s] made a 'statement,' in connection with the sale of personal property, 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'" *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp 2d 1172, 1176 (C.D. Cal. 2002) (quoting Cal. Bus. Prof. Code § 17500). Here, Plaintiffs do not allege an instance of the Entity Defendants or Defendant Selan selling or attempting to sell personal property or services of any kind. Thus, Plaintiffs did not adequately allege a claim of false advertising under Cal. Bus. & Prof. Code § 17500.

### iii.  The Sum of Money at Stake in the Action

Under the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). Essentially, the court must evaluate whether relief sought is proportional to the harm caused. *See Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014). However,

17

when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Bd. of Trs. v. Core Concrete Const., Inc.,* No. 11-CV-2532-LB, 2012 WL 380304, at *4 (N.D.Cal. Jan. 17, 2012) (citations omitted).

Here, the Plaintiffs have abandoned their original claims for monetary damages. Mot. at 16. Plaintiffs only seek to enjoin Defendants from "further impersonation of Plaintiffs and/or infringement of Plaintiffs' intellectual property." *Id.* at 19. Since Plaintiffs are only seeking injunctive relief, this factor favors granting default judgment. *See PepsiCo, Inc.*, 238 F. Supp.2d at 1176-77 (finding that seeking injunctive relief from the continued use of the plaintiff's trademarks on Defendant's counterfeit products and no monetary relief cuts in favor of default judgment).

### iv. The Possibility of Dispute Concerning Material Facts

The fifth Eitel factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *See Alameda Elec. Distributors, Inc. v. Eco Eng'g Inc.*, 808 F.Supp.3d 1014, 1031 (N.D. Cal. Nov. 4, 2025). "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012); *see also Landstar Ranger*, 725 F. Supp. 2d at 921–22 ("Since [plaintiff] has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment."). In addition, the defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint upon entry of default. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007).

Here, Plaintiff has set forth adequate allegations to support violations of the Lanham Act and the California Business and Professions Code, and the Plaintiff has obtained an entry of default. Accordingly, this factor weighs in favor of default judgment.

/ / /

18

3:25-cv-2284-GPC-SBC

### v.   Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor examines whether Defendants' failure to respond can be attributed to excusable neglect. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). This factor weighs in favor of entry of default judgment where the defendant was properly served.  *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010).  Here, Defendants were properly served but have failed to appear and defend. ECF Nos. 11, 12, 16. Further, there is nothing in the record suggesting this failure is based on excusable neglect. Thus, this factor supports default judgment.

### vi.   Policy Favoring Deciding a Case on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, "deciding the case on the merits is impossible where a party refuses to participate." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 970 (N.D. Cal. 2019). Thus, "Rule 55(a) allows a court to decide a case before the merits are heard if defendant fails to appear and defend." *Landstar Ranger*, 725 F. Supp. 2d at 922. Because Defendants have forfeited the opportunity to defend themselves on the merits by failing to appear and respond, "[t]his factor thus weighs against, but does not preclude, entry of default judgment." *Vietnam Reform Party*, 416 F. Supp. 3d at 970.

### vii.   Conclusion as to the *Eitel* Factors

In assessing all the factors, the Court concludes that the *Eitel* factors weigh in favor of default judgment for Causes of Action 2, 4, and 5.

### c.  Relief Sought

After establishing liability, the plaintiff must demonstrate the relief sought is appropriate. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). A "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Plaintiffs seek injunctive relief compelling Defendants

"prohibit further impersonation of Plaintiffs and/or infringement of Plaintiffs' intellectual property . . ." Mot. at 19.

"Injunctive relief is the remedy of choice for trademark infringement and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Under the Lanham Act, the Court has the power to grant injunction according to the rules of equity, and on such terms as the court deems reasonable, to prevent the violation of a mark holder's rights. 15 U.S.C. § 1116(a).  A plaintiff is not entitled to an injunction as a matter of course, but where a mark holder demonstrates ongoing infringement of its marks, an injunction is appropriate. *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177-78 (C.D. Cal. 2002).

Here, Plaintiffs have established that Defendants' use of the U.S. Trade Name is both likely to cause confusion and has continued to cause actual confusion to those seeking litigation against Plaintiffs. ECF No. 19-2 ¶ 8.[4] Without injunctive relief, Plaintiffs will likely continue to suffer irreparable harm through Defendants' use of their U.S. Trade Name.  *See PepsiCo*, 238 F.Supp.2d at 1178. Accordingly, injunctive relief is appropriate.

## IV.    CONCLUSION

While the above analysis shows merit in three of the claims, the remaining three claims concerning Plaintiffs' trademarks and false advertising are not supported by the current complaint. The Court will thus give Plaintiffs the option of voluntarily withdrawing the motion for default judgment and filing an amended complaint within **21**

---

[4] The declaration provides: "Since the filing of the instant action, Plaintiffs learned that two additional small-claims plaintiffs have mistakenly served Selan with process based on the mistaken assumption that Selan was the authorized registered for Plaintiffs, and the Entity Defendants were affiliated with Plaintiffs." *See also* ECF Nos. 19-3, 19-4.

**days** of this order. Plaintiffs' amended complaint and any renewed motion for default judgment must address the issues raised in this order. If Plaintiffs do not wish to withdraw the motion for default judgment within 21 days, Plaintiffs must notify the Court, and the Court will subsequently **GRANT** in part Plaintiffs' motion for default judgment.

   **IT IS SO ORDERED**.

Dated:  May 7, 2026

Hon. Gonzalo P. Curiel
United States District Judge

21